THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, vs.
CORDOVA PENNISTON, Exr., Appellee.

*Opinion filed February 21, 1914.*

INHERITANCE TAX—*when a finding fixing value of notes cannot
stand.* A finding of the county court in an appraisement proceed-
ing under the Inheritance Tax law cannot stand on appeal, where
such finding fixes the value at several thousand dollars less than
the face value of the notes but there is nothing whatever in the tes-
timony to indicate that such notes were not worth their face value.

APPEAL from the County Court of Cook county; the
Hon. JOHN E. OWENS, Judge, presiding.

P. J. LUCEY, Attorney General, and THOMAS J. YOUNG,
for appellant.

HOLT, CUTTING & SIDLEY, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This was originally an appraisement proceeding brought
under section 11 of the Inheritance Tax law of 1909,
which is now paragraph 376 of the Revenue act, (Hurd's
Stat. 1911, p. 1981,) for the purpose of fixing the amount
of inheritance tax due from the estate of May Buckingham,
who died testate in the city of Chicago on October 20, 1912.
The county judge appointed an appraiser to fix the fair
market value of the real and personal property owned by
the deceased at the time of her death. The appraiser gave
notice to all parties in interest and otherwise proceeded, as
required by the statute, to appraise the property, and made
a report of his appraisement to the county judge, which
was by said judge duly affirmed and approved. By said
appraiser's report the value of the real estate subject to
appraisal was fixed at $107,450 and the net value of the
personal estate at $318,213.24, making a total of $425,-

663.24. The executor of the estate being dissatisfied with the amount of the appraisement, appealed from the order of the county judge to the county court and the matter was set down for hearing and tried *de novo*. The only matter of dispute between the parties in the county court was the valuation to be placed upon several items of property. Upon this question evidence was heard, with the result that the county court reduced the appraisal of the real estate to $104,200 but the value of the personal property was not changed. The State contended in the county court that the appraisal of the personal property should be $323,599.90. The difference in dispute is $5386.66 in the value of the personal estate. The judgment of the county court has been brought to this court by an appeal on behalf of the People of the State of Illinois.

The court heard evidence in regard to the value of the real estate, and reached the conclusion that certain parcels of real estate were appraised too high and reduced the appraisement, but since the finding of the court as to the value of the real estate appears to be well within the range of the testimony, there is no complaint made in this court of the value fixed upon the real estate.

Appellant's contention is, that items 53, 54 and 55 of the appraiser's inventory of personal property were fixed too low by the county court, and that the finding of the court as to the value of these items is contrary to the evidence.

Item 53 of the inventory described twelve notes, each for $2000, dated April 1, 1911, all of which, by their terms, matured April 1, 1913, bearing five and one-half per cent interest, payable semi-annually. Said notes are secured by trust deeds to Orson Smith, trustee, on lots 1 to 12, inclusive, in Frederick H. Bartlett's subdivision of the southeast quarter of the north-west quarter of section 34, township 30, range 14, east. Each of said notes was secured by a trust deed upon a single lot in said subdivision. Said

lots were located on Forest avenue, and were designated by even numbers, from 3326 to 3348, inclusive. The value of these notes depends entirely upon the value of the real estate included in the several trust deeds which secured them. It is not contended that there is any personal responsibility of the maker of the notes. Walter H. MacDonald was the only witness who testified as to the value of the real estate embraced in these trust deeds. He is engaged in the real estate business and is a member of the firm of George E. Newberry, and he testifies that he has bought and sold real estate in the city of Chicago since 1883 and that he is acquainted with the value of real estate in the vicinity of the property in question. He testifies that each of the lots is improved with a two-story and basement stone-front dwelling, with brick sides and rear; that the trust deeds securing these notes were first liens on the several lots. He estimates the value of each lot on October 20, 1912, including land and buildings, at $3850.

Item 54 of the appraiser's inventory describes five notes made by Mary E. Stinson, each for $2300, dated November 4, 1911, and due November 4, 1916, bearing five per cent interest, payable semi-annually. Each of these notes is secured by a trust deed on lots 25 to 29, inclusive, in Burley & Buckingham's subdivision of the south-east quarter of the north-west quarter of section 34, township 39, range 14. Said lots are numbered 3423, 3421, 3419, 3417 and 3415 Forest avenue. Each of these notes is secured by a trust deed upon one of the above described lots. The evidence shows that each of these lots is improved with a three-story and basement brick dwelling. The witness Mac-Donald testified that these houses and lots are worth from $5500 to $5700 each, and that they have all been sold for these prices within a short time prior to the death of May Buckingham.

Item 55 describes eight notes, for $1900 each, dated and due the same as those described in item 54 and secured by

262 — 13

trust deeds on eight other lots located on Forest avenue. Each of these notes is secured by a trust deed on a separate lot. The evidence of MacDonald is that these lots, are all improved with two-story and basement stone front, brick dwellings. MacDonald testifies that seven of those places have been sold for from $3700 to $3850 each, and that the only one not yet sold is held at $3950. All of these sales occurred within eighteen months prior to the death of the decedent. He testifies the total value of these eight lots, with the improvements, on October 20, 1912, was $30,000.

The face value of these notes amounted to $50,700, and with accrued interest which was due at decedent's death the total was approximately $57,700. The decedent owned a one-half undivided interest in these securities. One-half of the face value is $25,350. The only evidence found in the record relating to the value of these notes is the testimony of the witness MacDonald. His testimony seems to be fair and credible. While this witness was on the stand the trial judge stated: "Let me say to you, from my knowledge of this witness I believe he has sold as much property as anyone. To be frank with you, that is one of the reasons he was picked out. Let me make him my witness." Thereupon the trial judge examined the witness to show how extensively he had been engaged in the sale of real estate, making loans, etc., in the vicinity where this property was located. The court fixed the value of a one-half interest in these notes at $20,000. We are at a loss to find any basis in the testimony for thus fixing the value below that indicated by any evidence in the record. The only inference that can be drawn from the finding of the court is that the evidence was disregarded and the finding based upon the judge's own opinion as to the value. If the evidence were as conflicting on this branch of the case as it was in regard to the real estate and the finding were well within the range of the testimony we would not feel called upon to interfere, but we are wholly unable to find any

basis in the testimony for reducing the value of these notes below their face value.

The judgment of the county court is reversed and the cause remanded to that court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*